## Mobile and Ohio Railroad Company v. Fannie Massey, as Administratrix of the Estate of John T. Massey, Deceased.

1. RAILROADS—*A Blind Station Defined.*—A blind station is a station at which there is no station house agent, or operator.

2. FELLOW-SERVANTS—*Conductor of a Construction Train and Workmen upon it.*—A conductor had entire charge of the movements of the construction train and also of the workmen, whom he hired and discharged at pleasure. His relations, therefore, to the workmen, was that of master, in respect to every duty they owed the company. He ordered them to get on and off the train, to work when and where as he desired; disobedience was at the peril of discharge. *It was held* his commands were in contemplation of law the commands of the company, and that the company was responsible for the consequences. The relation is that of master and servant, and not that of fellow-servants.

3. NEGLIGENCE—*Master Liable for Negligence of His Servant.*—If one servant is injured by the negligence of another, who at the time stands in the relation of the master to the injured servant, the company is liable.

4. NEGLIGENCE—*Master Liable for His Servant.—Application of the Rule.*—A conductor of a construction train, with workmen under him subject to his orders, and whom he employed and discharged at his pleasure, being at work upon the track with his train, received from the train dispatcher a notice of an approaching train and an order to protect it. He misread the order and so got the impression that the train was coming from the opposite direction from which it really was. Having completed his work at the point where he was, he ordered his men on board and started, as he supposed, ahead of the train he was to protect. A collision was the result. *It was held* that the company was liable.

Memorandum.—Action for damages. Death from negligent act. Appeal from the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Declaration in case, plea not guilty; trial

M. & O. R. R. Co. v. Massey.

by jury; verdict for $2,500 and judgment for plaintiff; defendant appeals, etc. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

### STATEMENT OF THE CASE.

On the 10th day of December, 1891, the appellant was operating a work train in removing earth from a cut on its railroad, between Jonesboro and Mountain Glen, Illinois. The train was composed of an engine and three flat cars. The train crew consisted of a conductor, an engineer, a fireman and a brakeman. In addition to the train crew proper, there were from twelve to fifteen shovelers or laborers who loaded the earth upon and unloaded the same from the train. These laborers would load the earth upon the flat cars, and would then get upon them and ride to the place where the earth was to be unloaded, and with their shovels unload the same. These laborers were boarded by appellant in a boarding car or cars, stationed at Mountain Glen. In going from their boarding cars to their place of work, and in returning from their place of work to their boarding cars, they would ride upon said flat cars. B. F. Rathwell was the conductor of said work train, and R. B. Cutler was the engineer thereof. In addition to being conductor of said train, the said Rathwell was foreman of said laborers, having the power and authority to hire and discharge them. He had entire charge of the train and the men. There was but one railroad track between Jonesboro and Mountain Glen, and that was the main track of appellant. There was but one switch or side track between Jonesboro and Mountain Glen, and that was a blind station called Kaolin. A blind station, is a station at which there is no station house, agent or operator. There was no telegraphic station between Jonesboro and Mountain Glen. It is six and eight-tenth miles from Jonesboro to Mountain Glen. The cut in which the work train was being loaded with dirt is about one and a half or two miles south of Mountain Glen, and about five miles north of Jonesboro. The switch at Kaolin was about one-half of a mile north of said cut and about a mile or a mile and a half south of Mountain Glen. The work train had to stand upon the

main track while it was being loaded with dirt in the cut, and it had to pass over the main track in hauling the dirt from the cut to Mountain Glen and in returning to the cut. The only way of notifying said work train of the coming of an extra train, was to send a telegraphic train order from the train master's office at Murphysboro, to a telegraphic station, directed to the conductor and engineer of said work train, in care of the conductor and engineer of a particular train known to be due by the conductor and engineer of said work train.

A copy of this telegraphic train order would be delivered by the operator receiving it to the conductor and engineer of the particular train in whose care it was sent, and they would take it and deliver it to the conductor and engineer of the work train. This was the manner provided by appellant's rules for the delivery of train orders to a train at a non-telegraphic station. Engine 53 is the engine which hauled said work train. This work train had to protect daily against eight or ten trains of the defendant. On said 10th day of December, 1891, appellant ran an extra freight train, known as extra 88 south, from Murphysboro, south. Murphysboro is north of Mountain Glen.

Extra 88 south, had to pass the cut in which the work train was loaded with dirt. The train dispatcher at Murphysboro sent a train order to Jonesboro, directed to the conductor and engineer of engine 53, the work train engine, care of No. 32, a regular north bound freight train, to protect for extra 88 south, after 4:30 P. M. This train order was received by the operator at Jonesboro at three o'clock P. M., on the 10th of December, 1891. One copy of this train order was delivered to John Lewis, the engineer, and two copies of the same were delivered to C. A. Larber, the conductor of No. 32, by the operator at Jonesboro, to be delivered to the conductor and engineer of engine 53, the work train engine. The work train ran with a load of dirt from the cut into Mountain Glen, a short distance ahead of No. 32, and went upon a switch track there, so that No. 32 could proceed north. When No. 32 reached Mountain Glen

it stopped its caboose, being then between two and three hundred yards from the engine of the work train. The engine cut loose from the train and went up to the water tank to take water, leaving the conductor in the caboose. When the engineer of No. 32 had taken water, he pulled up opposite the engineer of No. 53, the work train engine, and handed him his copy of the train order to protect for extra 88 south, after 4:30 P. M.

At the time that this copy of said train order was delivered to the engineer of the work train by the engineer of No. 32, the conductor of the work train was standing upon a flat car just back of the tank of engine 53. This train order was delivered by the engineer of No. 32, to the engineer of the work train about 3.45 P. M.

This copy of the order belonged to the engineer of the work train. The engineer of the work train made a mistake in reading said train order. He read the word south in the order north. Said order was to protect for extra 88 coming south. The engineer, by mistake, read the order to protect for extra 88, coming north. The conductor of the work train asked the engineer of his train, what the order was. The engineer held the order up in his hand and told him that it was an order to protect against extra 88, north after 4.30 P. M., and told him to come and get it. The conductor said, "All right, I will be there." He did not go and get the order, as it was his duty. The rules of the company required him to compare this order with the engineer's. At this time the engineer of the work train had but one copy of the order, and that was the copy which had been delivered to him by the engineer of No. 32. The conductor of No. 32, had not yet delivered his copies of the order to the work train. No. 32 was composed of an engine, sixteen freight cars and a caboose.

When the engineer of No. 32 had delivered his copy of said order to the engineer of the work train, he went back and coupled onto his train and started north with the same. Just as the work train was pulling out from the switch at Mountain Glen, the conductor of No. 32, from the caboose

of his train, handed the engineer of the work train two
more copies of the order to protect for extra 88 south, after
4:30 P. M. The conductor of the work train was at the
switch stand, about three or four hundred feet north of the
train, for the purpose of throwing the switch, to let his
train upon the main track, when the conductor of No. 32
delivered his copies of said order to the engineer of the
work train. The work train then went back to the cut for
the purpose of being again loaded with dirt, getting there
about four o'clock P. M. When the work train reached the
cut, the conductor, thinking from what his engineer told
him, that extra 88 was coming from the south, sent his
brakeman south of the work train to flag extra 88. The
manner provided by appellant's rules for protecting one
train against another, was to send a flagman from the train
to be protected in the direction from which the train to be
protected against was coming, sufficiently far to enable him
to stop the latter before it reached the former. The con-
ductor and engineer of extra 88 south, had also been duly
notified by appellant's train master not to pass Mountain
Glen until 4:30 P. M., and to look out for the work train
protecting between Mountain Glen and Jonesboro. When
the work train was about ready to start for Mountain Glen,
the conductor called in the flagman, said " All aboard," got
upon the engine with the engineer, told the engineer to let
her go to Mountain Glen, and at about 5:25 o'clock P. M.
the work train started from the cut toward Mountain Glen
with its last load of dirt for that day. It had gone about a
quarter of a mile from the cut when it collided with extra
88 south, running at the time about thirty-five miles an
hour. The conductor was on the engine. They jumped
before the collision. The plaintiffs, James Massey and
Dennis Godfrey, and the plaintiff, Fannie Massey's intes-
tate, John T. Massey, are three of the laborers who loaded the
flat cars of the work train, and they were riding upon said
flat cars at the time of said collision. They were injured by
the collision, John T. Massey afterward dying by reason of
his injuries. James Massey's declaration contains three
counts, all of which are substantially the same. The dec-

laration in the three cases are all based upon the foregoing facts.

Lansden & Leek, attorneys for appellant.

John Bain, attorney for appellee.

Mr. Justice Sample delivered the opinion of the Court.

There are three cases pending in this court, wherein judgment was rendered against appellant, on substantially the same state of facts, about which there was no dispute. They raise the legal question of the proper application of the doctrine of fellow-servants. If that doctrine applies to the facts, the defense is full and complete; if not, there is, no defense on the merits. The facts show that Rathwell, the conductor, had entire charge of the movements of the construction train, and also of the workmen, whom he hired and discharged at pleasure. His relation, therefore, to that crew of workmen was that of master in respect to every duty they owed the company. He ordered them to get on and off the train to work, when, where, and as he desired; disobedience was at the peril of discharge. His duty was to read, compare with the engineer, and personally know the contents of telegraphic orders sent directing the movement of his train. It was, therefore, gross negligence on his part to order the crew of workmen aboard his train and run it in a direction which he should have known would almost inevitably cause a collision. It can not be asserted, on his behalf at least, that his failure to perform a plain and exigent duty, which, if done, would have avoided the collision and the resulting injuries, was not negligence. It can be, however, on behalf of the company, if at the time of the collision his relation to the laborers who were injured, was that of a fellow-servant. While these men were at work in the cut, or dirt-pit, had Rathwell, with the relation he sustained to them, been guilty of a like degree of negligence in giving an improper order—when he should have known the proper order to give—which resulted in their injury, the company

would clearly be liable, for the reason his orders, in such case, would be essentially the orders of the employer. C., B. & Q. R. R. Co. v. McLellan, Admr., 84 Ill. 109, at p. 116. He would not, in such case, have been a fellow-servant.

As is said in the May case, 108 Ill. 299, and Hawk case, 121 Ill. 263: "When a railway company confers authority upon one of its employes to take charge and control of a gang of men, in carrying on some particular branch of its business, such employe * * * is the direct representative of the company itself. * * * When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations, and such commands are in contemplation of law, the commands of the company, and hence it is held responsible for the consequences." It is there further said : " The fact that he may have an immediate superior standing between him and the company, makes no difference." See also Wombacher case, 134 Ill. pp. 63, 64, and cases there cited. The above presents the uniform doctrine of this State where the injury results from the negligence of an employe standing in the relation of a master to those injured. It being clear that Rathwell stood in that relation to the men injured while at their work in the dirt-pit, did that relation change after they had ceased such work at his command, and were aboard the cars, by his order, of a train being negligently run, by his direction, to almost certain destruction? In the case of C., B. & Q. R. R. Co. v. Blank, 24 Ill. App. 438, where the conductor, Wm. Henry, who had like control over the construction train and its gang of twenty-seven men as in the case under consideration, gave an improper order as to the operation of the train while the men were aboard, whereby two of them were thrown from the cars, run over and killed, the company was held liable under the authorities above referred to. The company did not take an appeal. This case determines the law of the relation is not changed by the fact that the men are aboard the cars, when an injury results from a negligent order given by such superior in the operation of the train. No reason is perceived why it should.

When the relation of an employe is determined to be that of master, and the servant's injury is the direct result of such employe's negligence, as the proximate cause, the principal is liable. We know of no exception to this rule. Wombacher case, *supra.* It is no more of a defense to set up that Rathwell, the conductor and vice-principal, was misled into giving the negligent order by Cutler, the engineer, than it would have been in the May and Hawk cases, *supra,* that Frick and Button, who were vice-principals, were misinformed by some subordinate. Rathwell's ignorance of that which it was his duty to know, is no defense. Nor is it any defense that Rathwell was, at the time of the collision, operating the train in direct violation of a specific order of the company. Had Rathwell, against the express order of his principal, negligently worked his crew under an overhanging and dangerous bank, which fact he should have known, but was not known to the men, which bank fell upon and injured them, the company would have been clearly liable. As is said in the May case, the fact he had an immediate superior, who had the right to, or even did, command him, makes no difference, when he stands in the relation of master to the men injured by his negligence. The appellant relies chiefly on the Abend case, 111 Ill. 202, as holding that Rathwell and the men injured, were fellow-servants. In that case, it will be observed the engineer, who is also said to have been conductor, whose negligence caused the injury to the workman riding on the engine, in violation of known rules of the company, did not stand in the relation of master. The same is true of the McDonald case, 21 Ill. App. 409, and of all the cases cited in the Abend case. We do not deem it necessary to review cases cited from other States, for we understand our Supreme Court holds, that if one servant is injured by the negligence of another, who at the time stands in the relation of master, the company is liable. The conclusion reached being adverse to appellant, it is not deemed necessary to consider points raised as to the introduction of evidence, or the giving and refusing instructions, which do not affect the quantum of damages. The judgment is affirmed.