65   531
177s 591

## Illinois Central Railroad Company v. Henry Meyer.

1. PRACTICE—*Where the Court may Direct a Verdict for the Defendant.*—Where the evidence given at the trial with all the inferences that the jury could reasonably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case but may direct a verdict for the defendant.

2. FELLOW-SERVANTS—*Conductor and Brakeman.*—A conductor and brakeman upon a freight train, having the same common master, and co-operating together in the same line of employment in constant association with each other, are fellow-servants.

3. SAME—*Servants Invested with Power to Control Others.*—The fact that one of the number of servants is invested with power to control and direct the actions of the others will not, of itself, render the master liable for the negligence of the governing servant.

4. MASTER AND SERVANT—*Conductor as a Vice-Principal.*—In order to make the conductor of a railroad train a vice-principal he should have the power to employ the members of the crew and discharge them.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Lee County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the December term, 1895. Reversed with a finding of facts. Opinion filed June 1, 1896.

WM. BARGE and E. E. WINGERT, attorneys for appellant.

C. B. MORRISON and DIXON & BETHEA, attorneys for appellee.

The courts of last resort in the following States have held that a conductor was not a fellow-servant with others employed on the train: Ohio—Little Miami R. R. Co. v. Stevens, 20 Ohio, 416; Kentucky—Louisville Ry. v. Moore,

24 A. and Eng. R. R. Cases, 443; Louisville R. R. Co. v. Brook, 83 Ky. 129; Nebraska—Chicago R. R. Co. v. Lundstrom, 16 Neb. 254; 20 N. W. Rep. 198; Rhode Island— Mann v. Oriental Print Works, 11 R. I. 152; South Carolina—Boatwright v. North Eastern R. R. Co., 25 S. C. 128; Tennessee—East Tenn. R. R. Co. v. Collins, 85 Tenn. 227; Georgia—Central R. R. Co. v. DeBray, 71 Ga. 406; Virginia —Richmond R. R. Co. v. Williams, 86 Va. 165; 9 S. E. Rep. 990.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit in an action on the case by appellee against appellant to recover for damages arising from an injury receiver by the latter by reason of the train, on which he was fireman, colliding with another train running in the opposite direction on appellant's road, causing appellee, to save himself, to jump from his engine and injure himself. His left foot and leg were run over by the cars and crushed so that amputation became necessary. The accident occurred at or near the station of Lead Switch, in Jo Daviess County, Illinois. The first count in the declaration, and the only one on which appellee claims a right of recovery, and the only one which there is any evidence to support, seeks to recover on the theory and charge that the conductor of the train, George McDuff, was "the superior servant," in charge of the appellee as fireman and of the running of the train, and had entire control and management of it; in fact, that he was representing appellant as vice-principal in the running of the train and that the accident was due to his negligence in not causing the train which he was running, and on which appellee was fireman, to stop and not to run past Lead Switch station, where he was ordered by the train dispatcher or transmitter to "meet wild east bound train No. 508 at Lead Switch."

The train McDuff was running was No. 18, and was west bound. This wild train was the one with which the collision took place just west of Lead Switch. It is insisted on

the part of appellee that the failure of the conductor, Mc-
Duff, to cause the brakes to be set in time to stop his train
at Lead Switch and thereby prevent collision with the train
which he was ordered to meet there, was such negligence
as rendered appellant liable for the injury done to him by
reason of the collision. The act of negligence of McDuff
was one, if at all, of omission, and not of commission. The
declaration further avers that the conductor had control of
the fireman as well as all other of the employes of his train,
and had a right to report any disobedience of his orders to the
company and have them discharged, i. e., if the company
would discharge them for disobedience.

The case was tried by a jury and resulted in a verdict for
appellee and judgment was given against appellant for
$9,000, the amount of the verdict after remittitur of $6,000
by appellee.

The appellant insists that admitting all that the evidence
shows or tends to show, including all legitimate inferences
that can be drawn therefrom, the appellee has no cause of
action, and that the court below erred in not giving the jury
an instruction which it offered directing it to find the issues
for the defendant, which is as follows: "The court instructs
the jury that all the evidence in this case has been excluded
from the jury and there is now no evidence before the jury in
the case, and it is the duty of the jury to find the defendant
not guilty."

The instruction proceeded on the ground that there being
no evidence before the jury on which a verdict for appellee
could be properly based it should be excluded and the jury
instructed and find the appellant not guilty for want of
evidence.

It was in substance the same as to instruct the jury to
find for appellant on the evidence, there being none on which
a verdict could be based.

The appellee's counsel have argued the case, as they say,
as to whether the facts and the declaration make a good
cause of action, and say that the "record is in such condi-
tion that the case can be decided by this court upon its

merits," and if we find with them, to affirm, and if we believe appellee has no cause of action and can have no case under any circumstances, to reverse, the judgment.

We have carefully examined the evidence and duly considered the arguments of counsel, and have arrived at the conclusion that there is no material contradiction in the evidence and that the case can be fully considered as to whether the judgment can be sustained as a legal proposition.

The Supreme Court has holden that where no question of law has been raised in the Circuit Court, that the Appellate Court's finding of the ultimate facts on which the verdict of the jury necessarily rests is final and conclusive, and the Supreme Court will not consider, on appeal from the Appellate Court, the question as to whether the evidence as a whole sustains the verdict, and reverse for want of evidence, but will treat that as settled by the finding of the Appellate Court, that matter being without its jurisdiction in accordance with the provisions of the statute. I. C. R. R. Co. v. Reardon, 157 Ill. 372; Huntington v. Metzger, 158 Ill. 272. And the Appellate Court, according to the opinion in the last cited case, has no right to examine the question as to whether the evidence is sufficient to support the verdict except as a question of fact, and not as a question of law, unless the latter question be raised by an offered instruction in proper form sufficient to raise it. See also Lignard v. Rhoades, 156 Ill. 431. But the point as to whether there is evidence sufficient to warrant a verdict for a defendant, may be raised as a matter of law, so as to open for consideration in the Supreme Court on appeal from the Appellate Court by a demurrer to the evidence or its equivalent, or request to the court to take the case from the jury and instruct them to find a verdict for the defendant. I. C. R. R. Co. v. Reardon, *supra*. Numerous other cases decided in that court are to the same effect but the above are sufficient to show the rule established by the court.

It appears that in case there is no instruction, or what is equivalent to it, in the Circuit Court, to have the jury in-

structed to find for the defendant, a question of law can not be raised; but the Appellate and Supreme Courts are bound to treat the question as to whether there is sufficient evidence to support the verdict as a question of fact and not of law, even if the "evidence given at the trial with all the inferences that the jury could justifiably draw from it were so insufficient to support the verdict for the plaintiff, that if returned it must be set aside." See cases above cited, and as to the last proposition, The People v. People's M. Co., 126 Ill. 466.

If the evidence will not support the verdict and is so insufficient that the court must set it aside if for defendant, if rendered, and the question of its sufficiency is raised, as indicated by instruction to the jury, then it becomes a question of law, and the judgment of the Appellate Court, in case of affirmance by the latter court, may be reversed by the Supreme Court in a proper case for error in Appellate Court in not treating the sufficiency of the evidence to support the verdict as a matter of law, and reversing the inferior court's judgment, for error in not giving the instruction to the jury to find for defendant.

In the case at bar, the controlling question raised is, whether the conductor, McDuff, was a vice-principal with the appellee in his relation to him in running the train. In case he was, then the question of fellow-servants becomes unimportant, and the verdict would be sustainable; but in case he was not, then the conductor and appellee were fellow-servants, and the judgment should be reversed.

As to whether the conductor was vice-principal in his relation to the appellee in their joint occupation of running the train in question we regard as a question of law and not of fact, and was properly raised in the court below, as also as to the question of fellow-servant between the conductor and appellee. As to the first question, we will treat it as matter of law entirely; but in order to limit the consideration of the law question in the Supreme Court in case of appeal, we will find the facts as to the question of fellow-servants. The question in any given case under the state of the evidence, whether it is of law or fact, is in many cases a diffi-

cult one, and the boundary lines not easily discernible in many cases, even under the latest expression of the Supreme Court. Borg v. C., R. I. & P. R. R. Co., filed at Ottawa, Ill., March 28, 1896. A more particular discussion and definition of when it is a matter of law and when a matter of fact in a case well considered, will be found in the following case cited: Simmons v. Tomah R. R. Co., 110 Ill. 240.

The opinion delivered by Sheldon, Judge, Walker and Dickey dissenting, defines it in this manner, to wit:

" There may be decisions to be found which hold that if there is any evidence—even a scintilla—tending to support the plaintiff's case, it must be submitted to the jury; but we think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all the inferences that the jury could reasonably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." Another expression cited is the case of Frazer v. Horse, 106 Ill. 573. The evidence must be such that "in the eye of the law the jury could not reasonably find in the plaintiff's favor." The court in the Simmons case above, cites a number of cases, and among them three Illinois Supreme Court decisions. The above decisions have never been expressly overruled. The expressions, then, of the Supreme Court, often used, that in order to justify a court in taking a case from the jury, there must be no evidence " showing or tending to show plaintiff's cause of action," must be read in the light of the above decisions, and be regarded as equivalent to what is there said, where the definition is more particularly explained and laid down. We shall then so regard the rule in the absence of further light.

We shall now consider the question whether, as a matter of law, there was evidence legally supporting the verdict of the jury; and whether the Circuit Court erred in not giving the instruction above quoted.

There is no evidence tending to show that McDuff, as con-

ductor of the train, had any power more than any ordinary conductor of a train; he had no special supervision over the other employes or the engineer or fireman more than ordinary conductors. He was running the train from point to point and station to station under the time schedule and under the orders, telegraphic and otherwise, of a train dispatcher. There were twenty-six cars in the train he was running. He had no right to disobey the orders from the train dispatcher nor command the engineer or other employes to disobey them. His power was limited. He had no right to employ either the engineer or fireman or discharge them for any cause, or for disobedience of orders. He could report any dereliction of duty to headquarters or to the superior officers of the road; so could any other employe report any other. Rule 41 of appellant reads as follows : " No train will leave a station without a signal from its conductor, nor before its time as specified in the time table without a direct and explicit order from the trainmaster. Trains must be run under the direction of its conductor, except when his directions conflict with these rules or involve risk and hazard; in which case the engineer will be held equally responsible."

It seems from this rule that he had partial control over the train and the train crew, but could not act contrary to the company's rules, nor where his action involved risk or hazard; in which case the engineer was equally responsible. He had not the management of the train, the full control, as the principal officers of the company would have had, or that the train dispatcher had; and the engineer had a veto in case of risk, and he must judge of when there was risk, as a matter of course. It may be admitted that it was the duty of the conductor to so run the train inside the rules, and to so run it as to avoid injury to it and to every one connected with it and to the public, and the evidence tended to show that while he was aware that he was to meet the other train at Lead Switch he failed to keep his train under control so as to stop at that station or to avoid injury; but under the circumstances can he be regarded as the vice-principal of

appellant, so as to make it responsible for his negligent act, irrespective as to whether he was the fellow-servant of the appellee? If the conductor was not the vice-principal of appellant in regard to the negligence charged, and which the evidence tends to prove, he was clearly the fellow-servant of appellee.

It is claimed that the conductor was the representative officer of the defendant and had supervision over the employes of the train, including appellee, between the stations; represented the company; and the negligence of the conductor in such capacity was the negligence of the company.

Appellee insists that the conductor, being the representative of the company in running the train and supervising agent of appellant, with power to control a department of the business of appellant, was therefore vice-principal.

It is contended, and no doubt authorities can be found to hold, that where any power is delegated to one servant to do what the master should do, and there is negligence by which another employe working with him, to whom the master impliedly owes a duty, is injured, then to such injured employe the master will be responsible for resulting damages, but we do not understand that to be the law in this State. To carry this doctrine to its legitimate and logical conclusion would be to do away entirely with the doctrine of fellow-servants for the negligence of whom a co-employe can not recover for resulting injuries caused by his fellow-servant against the common master. Applying such a rule to the employes of a train, would make appellant liable for the negligence of the engineer to all those working with him, even to injuries to the conductor; for he had at least a joint power and responsibility with the conductor under the rules that he is held equally responsible with the conductor for disobedience of the rules.

Now, suppose the engineer should negligently fail to obey the rules, and damage should be caused to other of the subordinate employes, or to the conductor himself; the company by this process of reasoning would be responsible for damage resulting from such negligence to such other em-

ployes, because if the common master had been present in person or by its general agent and been performing the like duties, he would be responsible. The same rule would apply to the fireman and the brakeman on a train, and down to every employe to whom was delegated any part of the business of the master, even a common laborer; because a duty is imposed on the common master to so conduct the operations of labor as not to injure its employes; and if the master were present doing the labor in company with his or its employes and caused injury to any of them, by his or its negligence, he or it would be responsible for resulting damages. The line of distinction must be drawn somewhere if the doctrine of "fellow-servants" is to have any force or effect. We have nothing to do with the reasonableness of the rule or what rule other States and countries have adopted in connection therewith; nothing remains in this court but to apply the rule as we understand it to be adopted in this State.

It is insisted that the case of C. M. & C. R. R. Co. v. Ross, 112 U. S. 337, is a case in point, as in that case a conductor having entire control of a train, caused injury to a subordinate by acts of negligence, and the railroad company was held liable; but we do not think the case is in point as to facts, and, further, it adopted a rule not in force in this State; and we think it was substantially overruled in a later case by the same court, or at least so limited that it is no longer worth anything as authority. See Railroad Co. v. Baugh, 140 O. S. 379. In the latter case it was held that an engineer, who, under the rules of the company, was regarded as conductor, was not a vice-principal. We have examined both cases carefully, as well as the main and dissenting opinions in the latter case. Judge Field, who wrote the opinion in the first case for the court, also wrote a long dissenting opinion in the latter case. He insisted vehemently in his dissent that there was no difference in principle in the two cases, and that the court was overruling the Ross case. It is evident, in our minds, that if the Ross case had not been decided when the case of Baugh came up, that the

principle it announced would not have been held by the court as it was then constituted.

Paterson on Railway Accident Law, 326, 327, says the Ross case is "obviously open to criticism."

There is no dispute in this case, or claim by appellee, that the accident of the collision occurred in any other way than by the failure of the conductor to set the brakes himself, or to order the brakemen to do so, in time to stop the train at Lead Switch.

The accident did not occur on account of the conductor's exercise of any authority over the appellee, which appellee, by virtue of his inferior position, was bound to obey under penalty of discharge, but the negligence, if any, was what might have happened if any other person than the conductor had been intrusted with simply running the train and setting the brakes in connection with the fireman and others without any control over the fireman. The negligence was then that of a fellow-servant, done in the performance of a fellow-servant's duty. The conductor, so far as the evidence shows, was competent.

The fact that one of the number of servants is invested with power to control and direct the actions of others, will not of itself render the master liable for the negligence of the governing servant. C., B. & Q. R. R. Co. v. May, Adm'r, 188 Ill. 288; Clay v. C., B. Q. R. R. Co., 56 Ill. App. 235; Fauter v. Clark, 15 Ill. App. 470; W., St. L. & P. Ry. Co. v. Hawk, 121 Ill. 259; I. C. R. R. Co. v. Swisher, 61 Ill. App. 611, and cases cited; C. & A. R. Co. v. McDonald, 21 Ill. App. 409.

All the Illinois cases, so far as we have been able to find, in order to make the conductor a vice-principal, require he should have the power to employ the members of the crew and discharge them; though the master may be liable for the negligence of a servant not a fellow-servant. Libby, McNeill & Libby v. Schearman, 146 Ill. 540. In Iowa it is held a requisite. Foley v. C., R. I. & P. Ry. Co., 64 Iowa, 650.

These cases tend to show that the control of the train and

crew must be complete to constitute a foreman a vice-principal. Employes may be fellow-servants without being engaged in the same work, if the work has for its object a common end and purpose. Abend v. T. H. & I. R. R. Co., 111 Ill. 202. The courts of New York hold that a conductor whose duty it is to carry out the orders of a train dispatcher, in so doing is simply performing service, and is a fellow-servant with the other servants on the train. Slater et al., Adm'r, v. Jewitt, 85 N. Y. 61. We then think there was no evidence on which the verdict can be sustained, showing that McDuff was, as to the negligence from which the accident is claimed to have resulted, responsible as vice-principal, but on the contrary the evidence shows clearly, without any contradiction of facts, that he was a fellow-servant. The definition of what is a fellow-servant is so well understood we need not repeat it.

"The definition of what is a fellow-servant, is a question of law. Yet the question of whether a given case falls within the definition, is one of fact." M. & O. R. R. Co. v. Massey, 152 Ill. 144. And generally for a definition of fact, what is a question of law and what of fact, see Block v. Swift & Co., 161 Ill. 107, and cases there cited.

In this case there is no dispute as to the facts.

The servant, McDuff, and appellee, the fireman, were running and operating the same train, the one as conductor and the other as fireman; they were associating and laboring together, and without the question raised as to whether the conductor was or not a vice-principal, there could be no dispute or question but that they were fellow-servants. And if, as a matter of law, they were fellow-servants, the court should instruct that appellee had not made out his case. The question of whether McDuff was vice-principal, is a similar question of law, as applicable to the undisputed facts. He had certain powers, given by the rules of the company, and no others, and his act of negligence was in not keeping the train under proper control by setting the brakes in time, and he had no power to discharge appellee. As to these points there was no dispute. From those facts does it

follow, as a matter of law, that he was a vice-principal or a fellow-servant with appellee ? As we hold, he was a fellow-servant; and as a matter of law there was no evidence tending to prove, or inferences that could be drawn from it tending to show, that appellant was guilty as charged in the declaration. The court below then erred in not giving the instruction quoted, and in not directing the jury to find appellant not guilty.

For this reason the judgment of the court below is reversed, but inasmuch as we find as a matter of law there is no right of recovery, we will not remand the case, as it would be useless. We do not find "the facts" in the case only in part, as in certain case required by statute, because we do not reverse the judgment on the ground that we find the facts differently from those found by the court below.

The legal question as to whether as a matter of law there was any evidence to support the verdict, may be passed on by the Supreme Court if an appeal be taken, and by finding facts we could not deprive that court of its power to pass on the question of law here presented. The judgment of the court below is therefore reversed.

JUDGE CRABTREE took no part in the decision.

Finding of facts in part, upon which we reverse the judgment of the Circuit Court, differently from those found by the Circuit Court, to be incorporated in the judgment of reversal, to wit:

We find that the conductor, McDuff, mentioned in the declaration and evidence, was, at the time of the accident and injury received by the appellee, the fellow-servant of appellee, both having the same common master, to wit, appellant, and they were co-operating together in the same line of employment of the common master, in constant association with each other, unless under the evidence and as a matter of law, said conductor stood in the relation of vice-principal of appellant to appellee, which we find as a matter of law he did not. Reversed.