CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

CHARLOTTE BLANK, ADMINISTRATRIX.

*Railroads—Action for Damages for Causing Death of Employe—Negligence of Conductor—Liability of Defendant—Instructions—Fellow-Servants.*

1.  Where an employe who has control over other servants of the same master, with power to hire and discharge them, gives a negligent order to one of such servants, who, in obeying, causes injury to another of them, the master is liable for the damages.

2.  An instruction which is not based on the evidence or which raises an irrelevant issue, should not be given.

3.  In an action against a railroad company to recover damages for causing the death of an employe while engaged on a gravel train, it is *held:* That the negligence of the conductor is sufficiently stated in the declaration, it being sufficient to aver negligence in general terms; that the evidence sustains the charge of negligence contained in the declaration; that the evidence does not show negligence on the part of the engineer; that there was no error in modifying certain of the defendant's instructions; and that the allowance of $2,150 as damages was not excessive.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Henry County; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. H. BIGELOW, CHARLES K. LADD and O. F. PRICE, for appellant.

Appellant's first instruction asked, assumed as matter of law that the conductor, engineer, fireman, brakeman and all other persons engaged with the train in transporting gravel, were fellow-servants, and if they were, the instruction should have been given without modification, since the modification left it to the jury to find as a matter of fact whether they were fellow-servants or not.

The conductor, with all of the persons engaged on the train, were working in the same place, to subserve the same interests, and with their occupation so related to each other that

the safety of one necessarily depended to a greater or less extent upon the care of the others, and hence were fellow-servants. C. & A. R. R. Co. v. Murphy, 53 Ill. 336; Valtez v. O. & M. R'y Co., 85 Ill. 500.

One of the tests laid down by our Supreme Court by which to determine whether a person who is injured is a fellow-servant with the one whose negligence is the proximate cause of the injury, is, to inquire if both are engaged in the same *line of employment*, and by this is meant the forwarding of an immediate common purpose in which both are directly engaged. C., B. & Q. R. R. v. Gregory, 58 Ill. 272; Ryan v. C. & N. W. R. R. Co., 60 Ill. 171; P., Ft. W. & C. R. R. v. Powers, 74 Ill. 341.

Mr. C. C. WILSON, for appellee.

The master is liable for an injury to a servant resulting from the orders of a superintendent or other employe or agent having the supervision of the work, and power to employ, direct and discharge laborers. Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401; Gormly v. Vulcan Iron Works, 61 Mo. 492; C. & A. R. R. Co. v. May, 108 Ill. 288, and cases there cited; Grayville v. Minneapolis & St. L. R'y Co., 10 Fed. Rep. 711; Gilmore v. Northern Pac. R'y Co., 18 Fed. Rep. 866; Corcoran v. Holbrook, 59 N. Y. 517; Mullan v. Steamship Co., 78 Pa. St. 25; Mitchell v. Robinson, 80 Ind. 281; Patterson v. Pittsburg & C. R. Co., 76 Pa. St. 389; Ford v. Fitchburg R. Co., 110 Mass. 240; Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377; Cowles v. Richmond & D. R. Co., 84 N. C. 309; Lake Shore & M. S. R'y Co. v. Lavalley, 36 Ohio St. 221.

The employer is liable for the negligence of a superior servant whose orders the injured servant is required to obey, which causes injury to another employe, even though he be in the same general line of employment. Berea Stone Co. v. Kraft, 31 Ohio St. 287; Little Miami R. R. Co. v. Stevens, 20 Ohio, 415; Pittsburg, Ft. W. & C. R'y Co. v. Devinney, 17 Ohio St. 197; Galveston, etc., R. Co. v. Delahunty, 53 Tex. 206.

The question, what were the powers of William Henry, the

conductor, and how far he stood in the company's place and represented it to the men, is one of fact only, that is conclusively settled by the verdict. T., W. & W. R'y Co. v. Moore, 77 Ill. 217; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272, 284; Mullen v Steamship Co., 78 Pa. St. 25; Lehigh Valley Coal Co. v. Jones, 86 Pa. St. 432; Delaware & Hudson Canal Co. v. Carroll, 89 Pa. St. 374.

Lacey, J. The deceased, Henry Blank, with a gang of men numbering about twenty-seven, in November, 1886, was engaged in loading gravel on the cars of appellant, in the County of Bureau, under the control and direction of Wm. Henry, who was conductor of the train in the employ of appellant. The gravel bank from which the gravel was being taken was situated on the Buda and Rushville branch of the appellant's road, about three miles north of Buda, in Bureau County. A switch from the branch line runs from a point a little north, from and to the gravel pit. The train usually backs down from Buda to the gravel pit. The train, on the day of the accident, consisted of twenty-two gravel or flat cars, and a caboose or way car, and started to back down from Buda to the gravel pit. The caboose or way car, in which the men were riding, was at the south end of the train, but the caboose car could not be shoved into the gravel pit, it being wider than the space would permit. It was necessary to have it on the main track, south of the switch, till the flat cars could be shoved into the pit, and then the engine would return and get it, to attach it to the north end of the train.

While the caboose was being backed up, a quarter of a mile before it reached the switch, the conductor, Henry, ordered the men to leave the way car and to get onto the flat car, which they all did, and about the time the last of the men were making the change, the deceased among them, the conductor ordered the brakeman to pull the pin that coupled the way car to the rest of the train, and then the signal was given to the engineer to set the air-brake on the engine, which the latter did, in obedience to the signal. This had the effect, as it was designed to have, to cause the slack to be taken up in

the train, which in the whole train would be about the length of a car, and to slow up the main train and permit the way car to go ahead and leave the main train, and to pass the switch on the main track.  By setting the air-brakes after the slack was taken up, a considerable shock or jerking of the flat cars would be experienced, which happened in this instance.   The signal to set the brakes and shock came just about the time deceased and some of the other men were stepping on the hind end of the flat car, next the way car, and the jar threw the deceased and another man by the name of Rasmussen off of the end of the flat car, and they both fell on the track, and six or seven of the flat cars ran over and killed them, and for the damage to the means of support of the widow and next of kin of deceased, this suit is brought.

The gravamen of the charge in the declaration is that the conductor, Henry, as the agent of the appellant, was negligent in giving the order to the engineer to set the air-brakes before the deceased had time to get on the flat cars after being so ordered by him, and before he had time to get so placed as to guard against the danger of being thrown from the car in the manner in which he was.   The deceased was one of the gravel shovelers, and it is claimed and averred in the declaration that he was at the time in the exercise of ordinary care for his own safety.   It was averred that appellant's conductor gave deceased no notice that he was about to cut off the way car, but caused the uncoupling to be done in a violent and reckless manner.   There was a verdict and judgment for appellee for the sum of $2,150, from which this appeal is taken.

The evidence given in the case by the appellee tended to show that after the orders were given to the men to change from the way car to the flat car the conductor did not give time for all the men to get from the one car to the other, but that the deceased and a couple of the other men had not got over before the coupling pin was pulled by order of the conductor and the signal given to the engineer to slack, which he did just as deceased had stepped onto the flat car but had not had time to straighten up before the shock came and threw him off, when he was killed.  According to the appellee's evidence

it was a case of very gross carelessness in the conductor and caused the death of two men.

The evidence for defendant goes to modify this somewhat and tends to show that appellee's decedent would have had time and did have time to get out of the way of danger between the time the order to change cars was given and the shock; that the coupling pin was not drawn till after all had gotten safely aboard the flat car, and from the custom all knew the coupling was to be made that way and should have guarded against accident occurring from the jerking of the cars caused by setting the air-brakes.

But even the evidence on the part of appellant shows that the time for the men to get on the flat car and get settled was very short before the air-brakes were set and the shock came. We are satisfied from the whole evidence that the jury were justified in finding the appellant guilty of negligence in the manner charged in the declaration.

It is, as we understand it, not contended in the appellant's argument in chief that the verdict was against the weight of the evidence unless on the point that it shows that the conductor and deceased occupied the relation of co-employes of a common master. In the reply brief it is claimed, however, that the cause of the accident was deceased's own carelessness, and that the jury was prejudiced in giving its verdict. The declaration is broad enough in its averments to charge negligence on the part of the conductor in giving the order to uncouple and to take up the slack or set the air-brakes, and that the injury resulted in consequence.

There are several distinct facts set out in the declaration as having been done by the conductor, a portion of which relates to the manner and time of giving the order, and the declaration further avers that "the orders of the said conductor were given by him and the cars cut off and moved as aforesaid in a careless and negligent manner and in the total disregard of the safety of said Blank and other laborers on the train and without any caution to him, said Blank." That by reason of the *said orders by the said conductor*, the said way car and flat cars

were suddenly separated and violently jerked and moved in an unusual, violent and reckless manner, causing said deceased to fall from the car, etc.   The accident is stated to be caused by the violent jerking of the cars and throwing deceased under them by that means; but the cause of deceased being in a position to be injured when the shock came was, as is claimed, the order given in negligent manner, by being at a wrong time, without notice, and sooner than had usually been the custom, and sooner than deceased had a right to expect, and before he could guard against it.   The manner of the negligence need not be fully stated in the declaration; it is sufficient to aver negligence in general terms.   The manner of jerking of the cars was stated to be negligent and caused by the conductor's negligent order.   That is one of the points of negligence stated but it is not necessary to prove every averment as stated, so that enough of the charge is proven to make out a case.

The proof shows that there was always more or less jerking in slowing up, and enough to make it dangerous for a man standing on the cars unguarded and unprepared for it.

We think the declaration is sufficient and not obnoxious to the charges made against it by counsel for appellant.   It amounts to a charge that the conductor negligently, under the surrounding circumstances, gave an order to slack up the train and thereby set in operation causes that reasonably might have been foreseen would, and actually did, result in the death of deceased.   There is no charge in the declaration that the death of Blank was caused by any negligence of the engineer who set the air-brakes.   Nor is there any claim in the instructions given for appellee that there was any right of recovery except from the proof that the conductor gave the negligent orders to slack the train as he did.

Nor do we think the third of appellee's instructions is erroneous in stating " that if the conductor gave general directions to the brakeman in regard to cutting off the way car, and on the occasion in question was present and saw the brakeman pull the coupling pin and signal to the engineer to slow up, it made no difference; it was the same as though he did it himself."

The evidence tended to show that he had given general directions to the brakeman to make the signals to slow up the train and at the time the signal was given was present and ordered the uncoupling and did not object to the signal being given at that time. This is equivalent to giving the signal himself. The question of the liability of the appellant on the case stated in the declaration is not an open one in this State. Where an employe of a master having control over other servants of the same master, with the power to hire and discharge them, while engaged in some work of the master gives a negligent order to one of such servants, who, in obeying, causes injury to another of such servants, the common master is responsible for the damages done. Such superintending employe is regarded as standing in the place of the master as his agent in giving the order. It is another exception to the general rule that the common master is not responsible for the negligence of a common servant where another is injured in consequence. C., B. & Q. R. R. Co. v. May, 108 Ill. 288; Wabash R. R. Co. v. Harleck, opinion Supreme Court Ill., filed at Ottawa, June, 1887. This court is bound by those decisions.

The next objection is the modifying, by the court, the second offered instruction for appellant and giving it as modified. It is as follows: "If you believe from the evidence that the conductor of the train gave or caused to be given the usual and proper signal for the engineer to slow up or slacken the speed of the train, and *gave the deceased timely notice, to enable him to prepare for the natural effect of the slowing up according to such signal*, but that the engineer in attempting to obey such signal jerked the car on which deceased was standing more than usual, so that thereby the deceased was thrown from the car and killed, such jerking of the car would not, under the pleading in this case, be the carelessness, if carelessness it was, of the defendant, and the plaintiff would not be entitled to recover."

The words in italics constitute the modification made by the court.

Two questions arise: 1. Was the instruction as asked

proper.  2.  As modified did it work harm to the appellants even if incorrect.  We are of the opinion that the instruction was erroneous as asked for want of evidence to support it and otherwise, and also after it was modified for the same reason, and as modified worked no injury to appellants in any event. The object appellant had in view in offering this instruction was to raise an issue as to whether or not the cause of the accident was the negligence of the engineer in the manner of handling the train.  If so, the negligence of the engineer would be that of a fellow-servant engaged in the same line of employment with deceased, and no recovery could be had.

The instruction as asked ignored the idea that any negligence on the part of the conductor concurring with any supposed negligence of the engineer would have any effect to prevent the negligence of the latter from standing for the cause of the accident.  For the instruction says that if the jury "believe from the evidence that the conductor of the train gave or caused to be given the usual and proper signals for the engineer to slow up or to slacken the speed of the train, but that the engineer, etc., was at fault in handling the train, etc., there could be no recovery.

It is seen that this introduction to the instruction does not negative the idea that there was any negligence on the part of the conductor in the time and circumstances of ordering the signal in the particular complained of before deceased had time, after being ordered to leave one car, to reach the other and get securely seated.  The usual and proper signals may have been given, but negligence in regard to time and circumstance remain.  The instruction then amounted to the same as saying that it made no difference if the conductor was negligent in ordering the signal to slow up, yet if it was usual and proper as a signal, then, in case the engineer was negligent as to the manner of slowing up the train and the deceased was killed thereby, appellee could not recover.

This instruction was erroneous, as asked, for the reason that if the conductor gave the signal to slow up negligently and the engineer also was negligent, and the accident occurred in consequence of the two acts of negligence, the appellant would not be freed from liability.

The court undertook to modify it in a manner to exclude the idea of negligence on the part of the conductor by adding, " and (the conductor) gave the deceased timely notice to enable him to prepare for the natural effect of slowing up according to such signal." It is true that there might have been other circumstances to excuse the conductor from any charge of negligence not stated in the modification, but we do not think the evidence discloses any. But even if there were other circumstances overlooked by the court that would have excused the conductor from negligence on the issue presented by the instruction besides that added by the court, and the appellant thereby cut off from its benefits and the instruction rendered useless in the form given, the appellant had no right to complain, as the instruction was bad as asked and not hurtful as given.

The main complaint made by counsel for appellant to the modification of the instruction is that it "ignores the idea that deceased was bound to use ordinary care for his own safety." This is not a just criticism. The object of the instruction was not to lay down the law as the duty of deceased to care for his own safety, but rather, as to whether the conductor was sufficiently free from negligence to allow the responsibility for the accident to be shifted onto the shoulders of the engineer. It was a side issue raised with the intent to shift the burden of responsibility from a responsible to an irresponsible party; from a conductor, for whose negligence appellant would be responsible, to an engineer, for whose acts it would not be. If the deceased were negligent it was of no consequence whether the one or the other or both of appellant's servants were negligent. In neither event could appellee recover.

The jury, in appellant's instruction No. 4, was fully instructed on this point. It is as follows: " If the deceased was familiar with the manner in which such train was usually handled at or near the gravel pit south of Buda where he was killed, and at the time of his death the train was being handled in the usual manner at the place, and that his death was caused by a want of ordinary care on his part in placing

himself in a dangerous position, so that he fell or was jerked off the car, on which he was standing, onto the track, and was run over and killed by the cars, etc., you will find for defendant."

The jury could not, in the face of the above instruction, have been misled on the point suggested, and in view of the fact that the modified instruction complained of did not purport to deal with this question. The court was fully justified also in refusing it on the grounds that there was no sufficient evidence on which to base it.

The evidence both on the part of the appellee and appellant concurs that there was no unusual jerk from the slacking of the train, caused by setting the air-brakes. There is positively no proof of any carelessness of the engineer. The brakes were set in the usual and ordinary manner and no unusual shock was experienced. The shock was only such as might naturally be expected and was only sufficient to knock a man off the train who was not sufficiently balanced or braced.

The evidence of H. A. Bullock, the engineer, introduced by appellant itself, entirely contradicts and disproves any carelessness on his part and shows that the jerk was an ordinary one. He swears: "When I saw the signal I applied the brakes a little, so as to slow up gradually." Again, "When I received the signal I applied the air-brakes as light as I could at first." "I applied the brakes that morning just as I always did." He testifies that the train was running from six to eight miles per hour that morning. "If it (the train) was slackened so the men fell down it might be quick and it might not." "It would take a considerable jerk to throw a man down." The conductor himself swears: "The jerk was no more severe than usual." There appeared to be no effort on the trial to show that the fault was on the engineer in causing an unusual jerk in stopping the train, and there is no proof to that effect, neither do the instructions for appellee allude to it. The evidence would not justify the jury in finding there was. It was therefore improper to raise such an issue, which could alone be mischievous in distracting the mind of the jury by directing it to such an issue.

The court did not err in giving the instruction as modified or in refusing to give it as asked. The modification of appellant's sixth modified instruction as given was not error. It would have been proper to have refused it entirely, as there was no evidence on which to base it. The modification rendered it harmless. There was no question of the liability of fellow-servants in the case. All other modifications of appellant's proposed instructions were correct. The damages in our judgment are not excessive. The life of an industrious workingman, like deceased, ought to be worth the sum found by the jury in their verdict. The question of damages in cases like the one at bar is largely within the sound discretion of the jury trying the case. Perceiving no error in the record sufficient to reverse, the judgment is therefore affirmed.

*Judgment affirmed.*