The Chicago and Eastern Illinois Railroad Company

*v.*

A. J. Kimmel, Admr.

*Opinion filed April 17, 1906—Rehearing denied June 7, 1906.*

1. Railroads—*when railroad is liable for injury.* If the negligence of the foreman of a track gang, whose negligence is the company's negligence, contributes to the injury of a member of the gang, and the injury would not have occurred but for such negligence, the defendant is liable, notwithstanding the negligence of fellow-servants of the injured man may have contributed to the injury.

2. Fellow-servants—*when railroad employees are not fellow-servants.* The foreman of a gang of shovelers, having authority to hire and discharge the shovelers and to direct the movements of the crew in charge of the train carrying the cinders to be shoveled, is not a fellow-servant of the shovelers.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. Chetlain, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District, affirming a judgment of the Superior Court of Cook county in favor of appellee, and against appellant, for $1500.00, and costs of suit, in an action on the case, brought to recover damages on account of the death of William H. Rockhold, caused, it is alleged, by the negligence of the appellant.

The facts of the case as stated by the Appellate Court, are as follows:

"Rockhold at and for some time before his death was employed by the defendant as a laborer, in repairing, ballasting and surfacing its tracks near Marion, Illinois. He belonged to what was known as "Extra construction gang No. 4," in which were forty or more laborers. These laborers unloaded cinders from cars, prepared the road-bed and placed the cinders on the road-bed. The cinders were brought in cars from Chicago in regular trains, and the cars were left

on side-tracks near to the places, at which they were to be unloaded. To move the cars from the places where they were left to the places where they were to be unloaded, the defendant had an engine and an engine crew, consisting of a conductor, engineer, fireman and brakeman. The crew, as well as the laborers in extra gang No. 4, were under the charge and control of Francis, the foreman of the defendant in charge of said work, and both the engine crew and the construction gang were engaged exclusively in said construction work. The engine was used to take the laborers to and from the camp, in which they slept, to their places of work, and the engine was usually kept coupled to the cars, which were being unloaded, and used to move such cars when necessary. The engine or train crew only took part in operating the engine, coupling and uncoupling the cars, and other work connected with the operation of the engine and the cars attached thereto, and had nothing to do with the unloading of the cars, or the work upon the road-bed. The laborers had nothing to do with the operation of the engine, or the moving of cars.

"February 11, 1899, the engine crew were ordered by Francis to go from the place, where the laborers were unloading cars, to bring three other cars filled with cinders to be unloaded. They returned with three loaded cars in front of the engine. A train of eight or nine cars, upon three of which the brakes were set, stood coupled together upon the track upon which the engine and cars came from the south. On one of the train of standing cars Rockhold and eight or ten other laborers were at work, shoveling cinders from the car. The front car of the approaching train struck the car at the south end of the train of standing cars with sufficient force to drive that train forward forty or fifty feet, and thereby Rockhold was thrown from the car where he was at work to the track, and so injured as to cause his death."

Calhoun, Lyford & Sheean, (Robert J. Slater, of counsel,) for appellant.

ALDEN, LATHAM & YOUNG, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

There is evidence, tending to show that the crew, consisting of the engineer, conductor, fireman and brakeman, which had charge of the three cars loaded with cinders, and the engine attached thereto, coming from the south, were guilty of negligence in pushing the train forward, without giving proper warning, or signal, in such a way as to make it strike against the nine cars standing upon the track. The deceased, Rockhold, was at work shoveling out cinders in one of these cars, standing upon the track. In the train coming from the south the three new cars, filled with cinders, were ahead of the engine. The engine was at the rear of the three cars, pushing them forward, instead of hauling them.

The evidence tends to show that the business of Rockhold, the deceased, and the other laborers, who composed the extra gang No. 4, was that of shoveling cinders from gondola cars, spreading the same over appellant's right of way, ballasting the track, tamping ties, and occasionally doing some spiking, and that they had nothing to do with the operation of the train. On the other hand, the evidence tends to show that the duties of the train crew consisted in looking after the operation of the train, and that they had nothing to do with the shoveling of cinders, or other work, done by the members of extra gang No. 4, to which the deceased belonged.

Francis, the foreman, and the deceased, Rockhold, were not fellow-servants; and the language of the second count in the declaration sufficiently alleges the negligent act of Francis, the foreman, in failing to give Rockhold any warning of the approach of the engine and additional cars. As foreman, directing the movements of both the shoveling gang and the train crew, Francis was the direct representative of the appellant, and not a fellow-servant with any of the workmen.

At any rate, the evidence tends to show that, if the injury was not altogether the result of the failure of Francis to give warning, it was the result of combined negligence on the part of Francis in such respect, and the negligence of the train crew in pushing forward the engine and new cars in such a way, as to strike the standing cars. If the negligence of the representative of the appellant company, whose negligence is the negligence of the company, contributed to the injury, and the injury would not have occurred but for his lack of care, then the appellant company is liable. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242; *Chicago Union Traction Co.* v. *Sawusch,* 218 id. 130; *Chicago and Northwestern Railway Co.* v. *Gillison,* 173 id. 264; *Armour* v. *Golkowska,* 202 id. 144). Francis being the foreman of the extra gang No. 4, and directing the train crew as to the movements of the cars containing cinders, was vested with authority to hire and discharge the laborers or shovelers, and, therefore, under the decisions of this court, was not a fellow-servant of Rockhold. (*Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288; *Chicago, Burlington and Quincy Railroad Co.* v. *Blank,* 24 Ill. App. 438; *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *Graver Tank Works* v. *O'Donnell,* 191 id. 236).

The evidence also tends to show that it was customary to give the shovelers a warning by calling to them before a coupling was about to be made, and that Francis neglected to give such warning on the occasion when Rockhold was killed. There was a conflict in the evidence upon this subject, but it was for the jury to determine whether or not such warning was actually given by Francis, the foreman. We concur in the following views upon this subject expressed by the Appellate Court in their opinion, deciding this case, speaking through Mr. Justice Baker:

"The contention that this count (the second count) only charges negligence in respect to the control and management of the engine, cannot, we think, be sustained. The count

also alleges, as a substantial act of negligence of the defendant, the failure of the defendant to give to Rockhold any warning, that the engine or a car attached thereto was about to strike the car upon which Rockhold was then working, and that, through the act of negligence so charged, Rockhold received the injuries, which caused his death. To maintain this charge of negligence, upon the ground of the negligence of Francis to give such warning, the plaintiff was bound to prove facts, from which the jury might properly find that it was the duty of Francis to give such warning, as well as his failure to give warning, but it was not necessary to aver such facts or the existence of the duty; but it was sufficient to aver the ultimate fact, that the defendant was guilty of negligence in failing to give such warning to Rockhold.

"Francis testified that, at the time of the accident, he was standing by the side of the track about two car lengths from the south end of the train of cars, on which the laborers were at work; that, as the train to which the engine was attached approached to make the coupling, he saw the brakeman on the front car give the 'slow' or 'easy' signal to the engineer, and that he 'then turned and hollered to the men to look out.' The engineer testified that, when the cars came together, there was not any more jolt than an ordinary coupling would have made.

"The question, whether Francis was guilty of negligence, was a question of fact for the jury. In determining that question it was for the jury to say what was the duty of Francis under the facts and circumstances shown by the evidence, as well as to find what he did or failed to do. Whether there was evidence to warrant and support a finding by the jury that it was, under the circumstances shown by the evidence, the duty of Francis to give warning to the men, who were at work on the standing cars, is a question of law. But if there was evidence to warrant and support a finding by the jury, that it was the duty of Francis to give such warning, then the question whether it was or was not

the duty of Francis to give such warning is a question of
fact. The engineer testified that, when the cars came to-
gether, there was not any more jolt than an ordinary coup-
ling would· have made. Eight or ten men were shoveling
cinders from the same car with Rockhold, and other men
were working on other cars, and, by the concussion caused
by the impact, all the men were thrown down. When the
cars came together, Francis was standing by the side of the
track, two car lengths from the south end of the train of
standing cars. He saw the train approaching, and knew
that a coupling was about to be made between a·car of that
train and a ·car of the standing train.

"If the jury found, and we think the evidence warranted
them in finding, that it was usual and common in making a
coupling between a car of a moving and a car of a standing
train, for the former to strike the latter with as much force
as the one struck the other at the time in question, which
was, as has been said, with an impact sufficient to drive a
train of eight or nine cars, on three of which the brakes were
set, forward forty or fifty feet, and to produce a jar or con-
cussion, which caused all the men, who were standing on
those cars at work, to fall down, then we think that, in view
of the evidence as to the place where Francis stood, and his
knowledge of the peril, to which the men, who were at work
on the car, would be exposed when the moving train should ·
strike the standing train, and the other facts shown by the
evidence, the jury were warranted in finding, that it was the
duty of Francis to use reasonable care and diligence to give
to the laborers on the cars warning of the new peril, to which
they were exposed, so that they might throw themselves'
down upon the cinders, or take other steps to guard against
the danger of being thrown from the car, when the train, on
which they were, should be struck by the other train.

"The testimony upon the question, whether Francis gave
any warning to the laborers on the approach of the train, is
conflicting. He testified that, when he saw the brakeman

give the 'slow' or 'easy' signal, he called out to his men to look out. There is no testimony that anyone heard such call. Two witnesses, who were on one of the standing cars, testified that they did not hear him call out, and the brakeman, on his cross-examination, testified that he could not say that he heard Francis 'holler' at the men. Upon this testimony, and the testimony that all the men on the standing cars were thrown down by the impact, we cannot say that the jury were not warranted in finding that Francis failed to call out to the men on the cars, or to give them any warning of the approach of the train, or in finding that the failure of Francis to give such warning constituted negligence on the part of the defendant, which directly contributed to the injury and death of plaintiff's intestate."

It is said that the court committed error in some of its rulings upon the evidence. For example: A witness, named Hill, who was engaged with the other laborers in shoveling cinders out of the standing cars, was asked whether he ever knew the engineer, operating the engine and the three new cars, which struck the standing cars. It is assigned as error that the court permitted the witness to answer, that he did not know the engineer. This testimony is said to be improper, upon the ground that the fellow-servant rule does not rest in any degree upon the personal acquaintance existing between the servants, and that, therefore, it was immaterial whether any of the shoveling gang were acquainted with any of the train crew or not. It is unnecessary to discuss this question. We are of the opinion that, even if the ruling of the court upon this subject was wrong, it could not have done the appellant any harm, for the reason that the court gave, at the request of the appellant, an instruction, numbered 21, which was as follows, to-wit:

"The court instructs the jury that it is not necessary, in order to constitute two employes fellow-servants, that they should be personally acquainted with or know each other's names, or that they should be doing identically the same

thing at the same time. The rule, exempting the master from liability, does not rest in any degree upon personal acquaintance or actual previous association between the servants, but upon the relation of their duties to each other and the respective positions, which they hold. If, therefore, you believe from the evidence that, at the time the injury in question was received, the deceased, William Rockhold, was directly co-operating with the employes in charge of the locomotive in the particular work of the defendant then in hand, in such case it is your duty to find the defendant not guilty, even though you believe from the evidence that said Rockhold was not acquainted with said employes, so in charge of said engine."

Two or three instructions are objected to by the appellant upon the alleged ground that they singled out particular facts and called the attention of the jury thereto. These instructions did not call the attention of the jury to particular facts, which would or would not constitute a right of recovery, but merely to certain elements, which did or did not enter into the definition of fellow-servants. Even, however, if it be true that these instructions were not strictly accurate, yet all the instructions, given to the jury, should be construed as a whole, and, when they are so construed, the jury had before them all the elements which constituted a proper definition of fellow-servants, instead of particular and isolated elements. Twenty-three instructions were given on behalf of the appellant by the court, and, if the two instructions, to which appellant takes exception in this regard, were objectionable, taken by themselves, they cannot be so regarded, when taken with the rest of the instructions, which state in detail what is required under the fellow-servant rule.

We find no error, which would justify us in reversing the judgments of the lower courts. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*