MYRTLE ALDRICH, Admx., Appellee, *vs.* THE ILLINOIS
CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed October 26, 1909.*

1. FELLOW-SERVANTS—*co-operation must be in particular employment.* To make servants of the same master fellow-servants under the first branch of the fellow-servant rule, relating to co-operation, it is necessary that the servants, at the time of the injury, be co-operating with each other in a particular work, and it is not enough that they are servants of the same master and are co-operating in the general business.

2. SAME—*whether relation of fellow-servants exists is a mixed question of law and fact.* The definition of "fellow-servants" is for the court, but whether certain employees of a common master fall within that definition is a question of fact, and hence the question whether the relation exists in a particular case is a mixed question of law and fact.

3. SAME—*condition under which the relation of fellow-servants becomes a question of law.* The question whether the relation of fellow-servants exists becomes one of law only when there is no dispute with reference to the facts and when the evidence and all the legitimate conclusions to be drawn therefrom are such that all reasonable men will agree to the existence of such relation.

4. SAME—*freight crews in same "chain gang" are not necessarily fellow-servants.* Members of a freight crew are not necessarily and as a matter of law fellow-servants of the members of another freight crew, even though both crews belong to the same "chain gang" on the same division of a railroad and are engaged in moving freight on such division over a double track railroad; and this is true though there is some evidence tending to show that the duties of the crews brought them into habitual association.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding.

W. W. BARR, and CHARLES E. FEIRICH, (W. S. KENYON, of counsel,) for appellant.

NOLEMAN & SMITH, and W. F. BUNDY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an action on the case in the circuit court of Marion county by appellee, against appellant, to recover for the death of appellee's intestate from an injury received while in the service of appellant as a brakeman. There was a trial by jury and judgment in favor of the appellee for $8000. On appeal to the Appellate Court this judgment was affirmed, and a further appeal has been taken to this court.

Appellant has a double track from Centralia to Mounds, in this State, the south-bound trains having superior rights over the west track and the north-bound over the east track. In accordance with the rules of the appellant no north-bound train has any right to be on the west or south-bound track unless protected by sending out a flagman to warn any train approaching from the north. On October 23, 1907, the freight train on which the decedent was employed as brakeman left Centralia over the south-bound track, and had reached a point about a half mile south of Elkville and about a mile north of Hallidayboro when a collision occurred, which caused the death of the decedent. Some little time before this, another freight train of appellant had arrived from the south at Hallidayboro station and was engaged in what is called "pulling the mine." At Hallidayboro there are two main tracks and a passing track between them. The freight train going north stopped at Hallidayboro for the purpose of taking the coal cars from a switch track, and in order to do this the train was pulled in onto the passing track and left standing there while the engine was cut off, went to the north end of the passing track and backed down the west track to the mine. It there secured six cars, which were to be put on the front end of the train, and after making the necessary movements to get off the mine tracks and get the engine on the north end of the cars it was handling, the engine with these six cars moved north up the west main track to a point imme-

diately north of the north point of the switch, which leads off of the west main track at the north end of the passing track. Just as the engine and train of cars had started to back in off of the main track onto the north end of the passing track, the train on which decedent was employed came in sight and a head-on collision followed. It is conceded that it was then too late to stop the south-bound train and too late for the engine and six cars to get out of the way, and it is also conceded that it was the duty of the north-bound crew, under the circumstances, to send out a flagman a sufficient distance ahead to the north to warn trains and that this precaution was neglected. The train dispatcher of appellant was located at Carbondale. He had ordered the conductor of this north-bound train to "pull the mine," and knew that the engine and cars would have to be on the south-bound track in order to do the necessary switching there, but he failed to notify the crew of the train on which decedent was employed that the west or south-bound track at the Hallidayboro mine would be obstructed. This was not a meeting point or a customary passing point for these two trains and neither of the crews knew they would meet there. There was an electric signal block eight or ten car-lengths south of the north end of the passing track, which was constructed to work automatically. When there was a train or car south of this block the signal would show a red light to the north, so as to keep trains coming from the north warned, but as soon as a car or train passed out of this block to the north the light would show green. When the switch at the north end of the passing track was thrown to allow a train of cars to go in on the passing track the switch light would show red to the north. At the particular time of this accident, however, sufficient time had elapsed after the engine and cars got out of the electric block so that the semaphore light would not warn the oncoming train, and the switch light was not thrown in time to warn the crew of the ob-

struction. In fact, the trainmen on the south-bound train saw the headlight of the engine before they saw any other indication of obstruction on the track. The evidence tended to show that there was considerable smoke there, caused by a passenger train, which had just gone north. The decedent left his widow and four children, aged 9, 8, 4 and 1½, respectively. Twin children were born after his death, on April 10, 1908.

It is first urged by appellant, as a matter of law, that the members of the two train crews were fellow-servants; that both crews were in what the evidence denominates the "chain gang service," subject to call to handle any class of freight along the line of the road that the business might call for; that both crews at the time of the accident were engaged in the particular business in hand,—that is, the operation of the St. Louis division of appellant's road. We do not think, under the evidence in this case, that the crews of the two trains were fellow-servants. "To create that relation between servants they must be directly co-operating with each other in a particular work at the time of the injury, or their usual duties must be such as to bring them into such habitual association as will afford them the power and opportunity of exercising an influence, each upon the other, promotive of their mutual safety." (*Indiana, Illinois and Iowa Railroad Co.* v. *Otstot,* 212 Ill. 429; *Duffy* v. *Kivilin,* 195 id. 630.) To make them fellow-servants under the first branch of the rule they must be directly co-operating with each other in a particular business and in a particular line of employment. It is not sufficient that they be employed by the same master. In order to bring them within the rule they must directly co-operate in a particular business as distinguished from indirectly co-operating in the general business of the master. (*Illinois Steel Co.* v. *Ziemkowski,* 220 Ill. 324; *Chicago and Eastern Illinois Railroad Co.* v. *White,* 209 id. 124.) Manifestly, the two train crews were co-operating in the general business of

the master in the operation of the St. Louis division of appellant's railroad but not in any particular business. One train crew was moving freight north on the line of the defendant company and the other was moving freight south. At the time of the accident the train crew going north was taking out coal cars from the switch yards of the coal company, while the train going south had nothing to do with this particular business. If the contention of appellant on this point were to be upheld, then would it not necessarily follow that every person employed by the railroad company on this division of the road would be a fellow-servant with every other one, under the first branch of the rule? Such is not the law.

It is even more earnestly insisted by counsel that the members of the two train crews were fellow-servants under the second branch of the rule. The engineers and conductors of both these trains testified that they knew that north-bound trains frequently crossed the south-bound track at Hallidayboro to take cars from the mine switch tracks. There was no evidence to indicate that these train crews had ever passed at this point before or to show the extent of the association in the line of their work previous to this accident. Indeed, the only proof that tends to indicate in any manner any association was that the two train crews were engaged in hauling freight on the same division of a double track railroad. The definition of "fellow-servant" is for the court. Whether certain employees of a common master fall within the definition is a question of fact, hence whether or not the relation exists is a mixed question of law and fact. (*Indianapolis and St. Louis Railroad Co.* v. *Morgenstern,* 106 Ill. 216; *Hartley* v. *Chicago and Alton Railroad Co.* 197 id. 440.) Whether the relation of fellow-servant exists only becomes a question of law when there is no dispute with reference to the facts, and when the evidence, and all the legitimate conclusions to be drawn therefrom, are such that all reasonable men will agree to the

existence of the relation of fellow-servants. *Illinois South-ern Railway Co.* v. *Marshall*, 210 Ill. 562; *Indiana, Illinois and Iowa Railroad Co.* v. *Otstot, supra; Chicago and East-ern Illinois Railroad Co.* v. *Driscoll*, 176 Ill. 330; *Illinois Steel Co.* v. *Coffey*, 205 id. 206; *Chicago City Railway Co.* v. *Leach*, 208 id. 198.

In the case of *Lake Erie and Western Railroad Co.* v. *Middleton*, 142 Ill. 550, an engine hostler was on an engine which was standing on the main track near the depot and by the negligence of the engineer and crew of an incoming train a collision occurred. In *Mobile and Ohio Railroad Co.* v. *Massey*, 152 Ill. 144, a construction train and a wild freight train collided because of the negligence of the conductor of the construction train. In *Chicago and Western Illinois Railroad Co.* v. *Flynn*, 154 Ill. 448, the engineer of a freight train was injured because of the negligence of the brakeman of another train in not closing a switch. In *Chicago and Alton Railroad Co.* v. *House*, 172 Ill. 601, the fireman on a passenger train was killed through the neglect of the brakeman of a freight train to close a switch. In *Chicago and Alton Railroad Co.* v. *Swan*, 176 Ill. 424, the baggageman on a passenger train was injured through the negligence of the engineer on the same train. And in all these cases it was held that the question whether the doctrine of fellow-servants applied was one of fact, to be submitted, under proper instructions, to the jury. To the same effect are *Hartley* v. *Chicago and Alton Railroad Co. supra; Chicago and Eastern Illinois Railroad Co.* v. *Kimmel*, 221 Ill. 547; *Donk Bros. Coal Co.* v. *Thil*, 228 id. 233; *Chicago, Rock Island and Pacific Railway Co.* v. *Strong*, id. 281; *Chicago Terminal Railroad Co.* v. *Reddick*, 230 id. 105; *Gathman* v. *City of Chicago*, 236 id. 9.

While the facts in this record which would tend to show the relation of the two train crews are not in dispute, even if it be conceded that some of this evidence may tend to prove that the duties of the two train crews brought

them into habitual association, that evidence "was not of such a nature that but one conclusion could have been drawn from it, and therefore the question was properly submitted to the jury." (*Chicago and Eastern Illinois Railroad Co. v. White, supra,* on p. 131.) We do not think anything is said in *Illinois Steel Co. v. Coffey, supra, Chicago City Railway Co. v. Leach, supra, Chicago and Alton Railway Co. v. Bell,* 209 Ill. 25, or *Crane Co. v. Hogan,* 228 id. 338, that would lead to a contrary conclusion. In these last cases the court was of the opinion that the undisputed facts were of such a nature that all reasonable minds must necessarily reach the conclusion that the persons in question were fellow-servants. Such is not the case here. The facts are not of such a nature as to show beyond question that the relation of fellow-servants existed between the two train crews.

Our conclusion on the question of fellow-servants renders it unnecessary for us to discuss at length the question raised in the briefs as to whether it was the duty of the train dispatcher of appellant to give the crew of the south-bound train notice of the fact that the other train crew was taking out coal cars from the Hallidayboro mine. We deem it sufficient to say on the facts in this case, under the rules of law laid down by this court in *Rogers v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 211 Ill. 126, that this was a question of fact to be determined by the jury.

No other questions have been raised in this court in the brief and argument of appellant. The questions of fact as to whether the members of the two train crews were fellow-servants and whether the south-bound crew should have been notified by appellant were properly submitted to the jury.

The judgment of the Appellate Court must therefore be affirmed.

*Judgment affirmed.*