# Carl F. Taylor, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. MASTER AND SERVANT—*how question of fellow-servants determined.* Whether servants of the same master are fellow servants is ordinarily a question of fact to be determined by the jury under instructions by the court.

2. MASTER AND SERVANT—*when doctrine of fellow-servants does not apply.* While a master is not liable for an injury resulting to his servant from the negligence of a fellow-servant if such injury results from the negligence of the master concurring with the negligence of a fellow-servant, the servant can recover.

3. MASTER AND SERVANT—*what evidence tends to establish incompetency of servant.* Evidence as to the general reputation of a servant, through whose negligence an injury is claimed to have occurred, for drinking intoxicating liquors to excess, is properly admitted.

4. PERSONAL INJURIES—*what not essential to recovery.* In order to recover in an action for personal injuries it is not essential that the plaintiff prove each and every count of his declaration.

5. INSTRUCTIONS—*when need not sum up entire case.* An instruction which does not direct a verdict need not sum up the entire case.

PHILBRICK, P. J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed June 19, 1911. Rehearing denied October 24, 1911. *Certiorari* denied by Supreme Court (making opinion final).

STRAWN & STRAWN and BLINN & COVEY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

BEACH & TRAPP, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Within the limits of its yards at Dwight the appellant, Chicago & Alton Railroad Company, had, on April 24, 1907, several tracks running in a northeasterly and southwesterly direction, which from east to west were

known as the business track, the north-bound main track, the south bound main track, a switch track known as No. 2, the main track of the Peoria division and a coal track. West of the coal track were located a round-house and turn-table, and between the main Peoria track and the south-bound main track were located a water tank and the depot. A track running in a southeasterly direction from the round-house and over the turn-table connected the coal track with the main Peoria track, and the coal track at its north end was also connected with the main Peoria track. The latter track was also connected with the main south-bound track by a switch track which crossed track No. 2 at its north end. At the point where said switch track connected with the main south-bound track there was a switch stand equipped with green and red lights for use at night, the green lights appearing when the switch was closed and the red lights appearing when the switch was open. There was also a cross-over track connecting the main south-bound track with the main north-bound track, the switch stand for which cross-over track was located eight feet north of the switch stand last before mentioned, and was similarly equipped with green and red lights. Both of said switch stands were located on the west side of the main south-bound track. At the point where said cross-over track connected with the main north-bound track there was a switch stand located on the east side of said track, which switch stand was also equipped with green and red lights. All of the levers which operated the switches at the above designated switch stands, were locked with similar locks, to which there were two keys, one being kept by the foreman of appellant's yards and one by George Goodman, the night foreman at the round-house. At appellant's station in Dwight an electric block signal system was operated, whereby when a train running at night on the main north-bound track

entered the yard limits, about a mile and a quarter south of the station, the semaphore indicated a green light if the main north-bound track was clear and a red light if said track was occupied. There was no automatic connection between the signals upon the switch stands and the semaphore signal.

At 12:45 o'clock a. m. on April 24, 1907, an extra coal train, known as "extra 403," with Charles Tyner as engineer and appellee, Carl F. Taylor, as fireman, left Bloomington with orders to proceed to Brighton Park. Extra 403 arrived at Dwight at 3:45 o'clock a. m. The morning was very dark, and as said train was running at a speed of from 15 to 30 miles an hour on the main north-bound track, the engine collided with the tender of engine No. 230, which was then running backwards on the cross-over track connecting the main south-bound and main north-bound tracks. At the time of the collision the tender of engine No. 230 was projected northeasterly within such close proximity to the west rail of the main north-bound track that it was struck about four feet from its east or rear end. Engine No. 230 was a freight engine which had arrived at Dwight from Peoria at 2:15 o'clock a. m., and was then taken in charge by George Goodman and John Brown, his helper. It was the duty of Goodman and Brown to supply the engine with coal and water and to use the same in moving cars when necessary and for these purposes they had the right to operate it within the yard limits, subject to rules, as follows:

"Yard engines have the right to work within the yard limits, regardless of second or inferior class trains, but will give way as soon as possible on their approach."

"Yard engines will display the headlight in front and rear by night. When not provided with a headlight at rear, two white lights must be displayed. Yard engines will not display markers."

While engine No. 230 was not a yard engine in the

strict sense of the term, it was subject to be so used by Goodman and Brown and the rules governing the conduct of yard engines were either applicable to it or its conduct was governed by no rules whatever, and it was an intruder upon the tracks at the place of the collision. Extra 403 was running as an inferior class train and its movements were governed by the rules applicable to such trains, as follows:

"An inferior train must keep at least ten minutes off the time of a superior train in the same direction."

"All trains except first class trains must approach all regular watering or coaling stations with great care, expecting to find preceding trains occupying the main track, whether it be a stopping place per time-table for such trains or not, and must approach the yard limits with train under control and run carefully through the yards. The responsibility for collisions at such points will rest with the approaching train."

As a result of the collision of extra 403 with engine No. 230, Goodman and Brown were killed, Tyner was slightly injured, and appellee, Taylor, sustained very severe injuries, which in part required the amputation of his left leg below the knee. A trial of the case in the circuit court of Logan county resulted in a verdict and judgment against appellant for $15,000, from which judgment it prosecutes this appeal.

The acts of negligence alleged in the five several counts of the declaration upon which the case was submitted to the jury are, as follows: First, that appellant by its agents and servants, not fellow-servants of appellee, negligently ran engine No. 230 upon and along the cross-over track as extra 403 approached on the main north-bound track; second, that appellant negligently employed and retained in its employment careless, reckless and incompetent servants, viz: Goodman and Brown; third, that appellant left open and kept open the switch at the south end of the cross-

over track whereby engine No. 230 when running north on the main south-bound track ran into said open switch and upon the cross-over track to the main north-bound track where said engine was struck by the engine of extra 403; fourth, that appellant negligently permitted its said reckless, careless and incompetent servants to so, as aforesaid, run said engine No. 230; and fifth, that appellant negligently maintained the lever of the switch connecting the side track with the south-bound main track and the lever of the switch connecting the south-bound main track with the cross-over to the north-bound main track in too close proximity, to-wit: a distance of eight feet, and also negligently failed to connect and operate said switches with its electric block signal so that when the switch connecting the south-bound main track with the cross-over to the north-bound main track was open the electric block signal showed clear on the north-bound main track instead of showing the danger signal.

A passenger train known as No. 6 left Bloomington going north at 2:10 a. m. and gradually gained upon extra 403 so that when the latter train reached Odell, the first station south of Dwight, it was only four minutes ahead of the schedule time of No. 6 at Odell. As extra 403 approached Odell the rear brakeman, anticipating that the train would take the side track there, jumped off and ran back for the purpose of flagging No. 6. The semaphore at Odell then indicated a clear track and an implied direction to proceed, and in view of the fact that his train was, as he says, on short time ahead of No. 6, and that No. 6 had certain work to do at Dwight, the engineer, Tyner, did not take the side track at Odell but ran to Dwight. The rear brakeman on extra 403 flagged No. 6 before it reached Odell and rode in the engine cab until it reached Dwight shortly after the collision. Tyner doubtless contemplated taking the side track at Dwight, and having passed the

switch point there, he decided to run on to Mazonia about eleven miles north of Dwight and permit No. 6 to pass, rather than back his heavy train on an upgrade and thus cause a delay which would further encroach upon the schedule time of No. 6.

Counsel for appellant insist that the failure of the engineer of extra 403 to take the side track at either Odell or Dwight together with his failure to observe the rule requiring an inferior train to keep at least ten minutes off the time of a superior train in the same direction, was the proximate cause of the collision with No. 230 at Dwight, but we cannot so regard it. The failure in those respects is only to be considered as bearing upon the question of the rate of speed at which extra 403 was running through the yards at Dwight in the effort of the engineer to reach a side track, some distance north of Dwight, in time to enable No. 6 to pass.

It must be conceded that extra 403 when it entered and was running through the yards at Dwight was exceeding the speed limit fixed by the rules of appellant, and that if the negligence in that regard of the engineer, Tyner, was the sole proximate cause of the collision, appellee cannot recover, because Tyner and appellee were fellow-servants as a matter of law. The situation, however, as it existed at and immediately prior to the time of the collision, was, substantially as follows: The location of engine No. 230 upon the cross-over track was such that it obscured a view of the lights upon the switch stands located west of the main south-bound track, to appellee and the engineer of extra 403, as it ran north on the main north-bound track. Engine No. 230 was being operated by Goodman and Brown without lights at either its head or rear end. The light on the switch stand located on the east side of the main north-bound track at the north end of the cross-over track was green, indicating that

the switch was closed and that the main north-bound track was clear. The light in the semaphore was green, indicating that the main north-bound track was clear and that a train approaching on that track from the south might proceed with safety. Appellee and Tyner were on the lookout as they ran north, and observed these green lights a long distance in advance of the train, and before the point of the collision was reached, and thus being assured of a clear track they proceeded with a sense of safety. As extra 403 ran into Dwight the bell on the engine was ringing, several crossing signal whistles were sounded, and the engine was equipped with a conspicuous head-light. Looking south from the cross-over track upon which engine No. 230 was running, the view of a train on the main north-bound track was unobstructed for a distance of from two to four miles. The purpose of Goodman and Brown in running engine No. 230 on the cross-over track at the time in question is not disclosed by the evidence and can, therefore, only be conjectured. On behalf of appellee it is suggested that the engine was run on the cross-over track by inadvertence on the part of Brown who was evidently operating the switches; that Goodman and Brown purposed to run north on the main south-bound track to water the engine, but that by reason of the two switch stands being only eight feet apart Brown inadvertently or carelessly opened the north switch instead of the south switch and the engine was thus about to run on the main north-bound track when it was struck by the engine hauling extra 403. The cross-over track ran between and so nearly parallel with the two main tracks that in the darkness Goodman might not unreasonably have supposed he was about to run north on the main south-bound track. Counsel for appellant suggest that engine No 230 was intentionally being about to be run on the main north-bound track for the purpose of taking water

from a spout which was located some distance north of the cross-over track and on the east side of said main track. The theory advanced by appellee appears much the more plausible. Goodman and Brown knew the schedule time for the arrival at Dwight of the north-bound passenger train No. 6, and that it was then within only five minutes of such time. Having this knowledge it is altogether improbable that they would have run engine No. 230 on the main north-bound track for the purpose of taking water.

Whether or not Goodman and Brown were negligent in the respects mentioned was properly submitted to the jury, as was also the question whether or not they were fellow-servants with appellee. It cannot be said that such relation of fellow-servants existed as a matter of law (Aldrich v. Ill. Cen. R. R. Co., 241 Ill. 402), and we are not disposed to hold that the finding of the jury against appellant on that issue is unwarranted as a matter of fact.

While appellant would not be liable for an injury resulting to appellee through the negligence of Tyner, his fellow-servant, it is well settled that if such injury resulted from the negligence of appellant•or its servants, not fellow-servants of appellee, concurring with the negligence of Tyner, a fellow-servant of appellee, the latter can recover. Yarber v. C. & A. Ry. Co., 235 Ill. 589.

Within the rule stated it was also a question of fact for the jury whether or not appellant was negligent in failing to connect the switch leading to the main north-bound track with the semaphore signal, so that the latter would indicate an obstruction on the cross-over track to the movement of trains on said main track. To determine this question against appellant it was neither necessary nor proper that any witness should have testified that the failure of appellant to make such a connection constituted negligence. There

is evidence in the record tending to show that such connection was practicable.

Appellee in order to recover was not bound to prove each and every count of his declaration, and it may be conceded that the proof was insufficient to sustain a recovery under the counts which allege the employment by appellant of incompetent servants. As bearing upon this issue, however, evidence as to the general reputation of Brown for drinking intoxicating liquors to excess was not improperly admitted. Western Stone Co. v. Whalen, 151 Ill. 472.

The first instruction given at the instance of appellee does not direct a verdict, and it was not necessary that it should require proof of all the elements requisite to a recovery by appellee. The instruction relates solely to the fellow-servant question and is substantially accurate. P. C. C. & St. L. Ry. Co. v. Bovard, 223 Ill. 176. As to form the fifth instruction given at the instance of appellee is approved in Klofski v. R. R. Supply Co., 235 Ill. 146. The objection that certain counts in the declaration to which demurrers had been sustained might have been considered by the jury under the language of the instruction is not tenable in the absence of any showing in the record that such counts of the declaration were brought to the attention of the jury. The other objections to the instruction are disposed of in Scott v. P. & O. Co., 245 Ill. 460.

As to the first instruction tendered by appellant and refused by the court, it is merely generally asserted that the instruction should have been given. The instruction was properly refused because while it directs a verdict it excludes the element of liability resulting from the concurring negligence of appellant and a fellow-servant of appellee.

While the amount of damages awarded by the jury is large, we are not prepared to say, after a careful consideration of the evidence relating to the character

Taylor v. C. & A. R. R. Co., 164 Ill. App. 348.

and permanency of the injuries, the repeated surgical operations made necessary by such injuries, and the pain and suffering endured by appellee, that the amount is so excessive as to require a *remittitur*.

There is no error in the record prejudicial to appellant and the judgment will be affirmed.

*Affirmed.*

PHILBRICK, P. J., dissenting.