## Franciszek Makuch, Appellee, v. Chicago Junction Railway Company, Appellant.

### Gen. No. 16,134.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. MASTER AND SERVANT—*when risks not assumed.* A servant does not assume extraordinary risks, not necessarily incident to his employment unless such risks are known to him and he voluntarily continues to work.

3. MASTER AND SERVANT—*what risks assumed.* The risks assumed by a servant are such only as cannot be obviated by the master's employment of reasonable measures of precaution.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 6, 1912. Rehearing denied February 20, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN D. BLACK and JOHN C. SLADE, of counsel.

ROCKHOLD & BUSCH, for appellee; FRANCIS X. BUSCH, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

This action is for the recovery of damages for personal injuries sustained by appellee on October 1, 1907, by being thrown from and under one of the cars of appellant, appellee being a laborer assisting in the work of unloading sand from the cars.

The case was tried before the court and a jury, and resulted in a verdict of $8,000 in favor of the appellee, upon which judgment was rendered.

The appellant urges as grounds for reversal of the judgment, that the court erred in overruling its motion for a directed verdict, made at the close of plaintiff's case; that the court erred in overruling appellant's motion for a new trial; and that the court erred in its rulings on instructions.

The appellee had been working for the appellant about one week at the time of the accident. During that time he had been employed on track elevation work at Forty-ninth street between Union avenue and Wallace street, unloading sand and raising tracks. A temporary timber structure had been erected over Union avenue, about 17 feet high. A temporary track sloped gradually to the level of Halsted street on the west, and there was just east of the Union avenue temporary structure an incline so steep as to prevent an engine from coming east of Union avenue and to make it necessary to set the brakes on the cars which were shoved over Union avenue onto the temporary track. There were five or six cars east of Union avenue, and the appellee was working at one end of the one next to the last car furthest from Union avenue, there being three or four cars between Union avenue and the appellee. From where he was working it was impossible to see west of the Union avenue structure. While appellee was working upon the car at the time of the accident, the foreman, whose name was Shannon, ordered a conductor to bring in six more cars. The con-

246       APPELLATE COURTS OF ILLINOIS.

Makuch v. Chi. Junct. R'y Co., 167 Ill. App. 244.

tention of the appellee is that Shannon ordered the
appellee and all the other laborers to get on the cars
and shovel sand, after he had ordered the conductor
to bring in more cars; that Shannon did not warn the
men of the approach of the second lot of cars at any
time; that when these cars were brought in they were
shoved up the incline on the west of the Union avenue
temporary structure and against the cars standing on
that structure; that this was done with great violence,
causing the cars to move about the length of a car,
and causing the appellee to be thrown from the car in
such a way that the wheels of one of the cars passed
over his leg, injuring it to such an extent as to require
amputation. It is further contended by appellee that
the evidence shows that before the coupling was made
no bell or whistle was sounded near enough to the
place of coupling to enable the appellee and the others
working upon the cars to hear; that it had been the
custom for the foreman to warn the men of the ap-
proach of cars under such circumstances, so that the
men might get off the cars and place themselves in a
position where they would not be injured. It appears
that there were tracks of the Grand Trunk Railway
Company immediately south of the Chicago Junction
tracks and parallel with them; that these Grand Trunk
tracks had been elevated before the work on the Chi-
cago Junction tracks began; that there was a retain-
ing wall along the south side of the Grand Trunk
and one on the north side of the appellant's tracks be-
tween Union avenue and Wallace street; that the plan
was to fill in all space between these two retaining
walls, putting the Grand Trunk tracks and the appel-
lant's tracks on the same level.

The testimony of Shannon, the foreman, was to the
effect that when the first seven cars were put in he was
more than a block away and that he did not get back
to the cars until after the men had gotten into them.
He further testified that when he heard the engine

coming up the hill he told the men to "look out" for themselves—that, they were going to make another coupling; that he heard the engine sound a whistle and ring a bell, and shouted for the men to look out for themselves; that when he shouted some of the men looked up and some of them shouted to the others to look out; that when the impact came none of the men were knocked down but some of them jumped from the cars; that it was always customary before the accident to move cars on that track while the men were working in them, and that it was done the same way before the accident as it was done at the time of the accident; that the only warning he had ever given at previous times was "look out boys."

Shannon's testimony with regard to having given the warning to the men is corroborated by other witnesses for the appellant. The testimony of the greater number of witnesses, however, appears to corroborate the testimony of the appellee that no warning was given, which of course necessarily was in the negative form and to the effect that they did not hear any bell rung or whistle sounded, and that they did not hear Shannon give the usual warning "look out."

The first point argued by the appellant on the alleged error of the court in overruling its motion for a directed verdict is that if there was any negligence which contributed to the appellee's injury it was that of a fellow-servant. The claim is made that Shannon, with respect to the particular work in hand, was a fellow-servant of appellee. We do not think such is the law. In C. R. I. & P. Ry. Co. v. Strong, 228 Ill. 281, cited by appellant, it was held that in an action for damages for the death of a switchman, caused by the negligence of the foreman of the switching crew in improperly signaling the engineer to back the train, the question whether the signal was given in the foreman's capacity as foreman or in the capacity of a fel-

248    APPELLATE COURTS OF ILLINOIS.

Makuch v. Chi. Junct. R'y Co., 167 Ill. App. 244.

low-servant of the switchman is one of fact for the jury.

In Nordhaus v. Vandalia R. R. Co., 242 Ill. 166, the court had a somewhat similar case under consideration. In that case the plaintiff's intestate, Zehak, with others, was in a car, shoveling cinders out through an opening in the bottom. The car was run into by a car attached to a switch engine, through the negligence of a flagman, and the court said: ''We do not think, however, that the court could rightfully have declared, as a matter of law, that the flagman through whose negligence the accident occurred was a fellow-servant with Zehak.''

In the case of C. & E. I. R. R. Co. v. Kimmel, 221 Ill. 547, plaintiff's intestate, Rockhold, with other laborers, was at work shoveling cinders from a car which was one of a train of standing cars. The foreman, a man named Francis, had directed the movements both of the shoveling gang and the train crew. The court held in such circumstances that ''Francis was the direct representative of the appellant, and not a fellow-servant with any of the workmen. * * * If the negligence of the representative of the appellant company, whose negligence is the negligence of the company, contributed to the injury, and the injury would not have occurred but for his lack of care, then the appellant company is liable. * * * There was a conflict in the evidence upon this subject, but it was for the jury to determine whether or not such warning was actually given by Francis, the foreman.''

We think that the questions of fact as to whether or not the accident was due to the negligence of Shannon, the foreman, and whether at the time of the accident Shannon was a fellow-servant of the appellee or vice-principal of the appellant, were both properly left to the jury to determine, and we find nothing in the record which would justify us in setting aside the verdict upon the ground that it is against the manifest

weight of the evidence in these regards.

An argument is made by the appellant upon a proposition advanced that appellee assumed the risk of the usual method of handling the cars, upon the theory, as we understand it, that it was customary before the accident to move cars while the men were working in them. The testimony tends to establish the fact that the cars were upon a temporary trestle work; that the brakes were set to prevent their moving down the incline; that theretofore it had been the custom of the foreman to warn the men before other cars were allowed to come in contact with the cars upon which the laborers were working. Indeed, appellant in its brief says: "There was no dispute of the proposition that ordinarily and on all occasions but this one Shannon called a warning to the men on the cars whenever the engine approached and they would take position so as not to be injured." It is true that the foreman, Shannon, testified that it was always customary before the accident to move the cars while the men were working in them, but apparently he was the only witness who testified to that effect, and his testimony is contradicted by several of the witnesses for appellee. A servant does not assume extraordinary risks not necessarily incident to his employment, unless such risks are known to him and he voluntarily continues to work after such knowledge. I. T. T. R. R. Co. v. Thompson, 210 Ill. 226. The risks assumed by a servant are such, only, as cannot be obviated by the master's employment of reasonable measures of precaution. C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471.

It is next urged upon us that the judgment should be reversed because, as alleged, three of the instructions given as tendered by the appellee were erroneous, and because the court modified three of the instructions tendered by the appellant and gave them as modified. Nine instructions as tendered by the appellee were read to the jury, also fifteen as tendered by the appellant,

three of the latter, as heretofore stated, being somewhat modified. We think the instructions as a whole fairly advised the jury as to the law which should govern them on the different questions presented by the evidence. In our opinion, the three instructions tendered by the appellee, which are criticised, could not have misled the jury in view of the other instructions. The jury were instructed that the instructions constiuted one connected body or series and should be so regarded by them. All of the instructions tendered by the appellant were given, and the modifications in three of them were not of such character as in our opinion should cause a reversal.

The judgment will be affirmed.

*Judgment affirmed.*